**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BAHER ABDELGAWAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1641  (SEALED) |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| MARK MANGIERI, individually and | ) | |
| as director of and on behalf of | ) | |
| Exclusive Supplements, Inc., and | ) | |
| ANTHONY RAZZANO, individually | ) | |
| and as director of and on behalf of | ) | |
| Exclusive Supplements, Inc., and | ) | |
| JOHN J. RICHARDSON, individually | ) | |
| and as director of and on behalf of | ) | |
| Exclusive Supplements, Inc., and | ) | |
| DANIEL COLUMBUS, individually | ) | |
| and on behalf of Exclusive Supplements, | ) | |
| Inc., and TIMOTHY GATTI, individually | ) | |
| and on behalf of Exclusive Supplements, | ) | |
| Inc., and EXCLUSIVE SUPPLEMENTS, | ) | |
| INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

Pending before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for a more definite statement (Doc. 12).  For the reasons that follow, the motion to dismiss will be granted in part and denied in part, and the motion for a more definite statement will be denied.

## BACKGROUND

As the parties are well aware of the factual and procedural events giving rise to the pending motion, the Court will recite only those facts alleged by Plaintiff that are material to the Court's ruling.  Plaintiff Baher Abdelgawad, a citizen of California, and Defendant Mark

Mangieri, a citizen of Pennsylvania, were joint shareholders of a Pennsylvania corporation formed on or about June 17, 2005, and known as Exclusive Supplements, Inc. ("ESI"). (Amended Complaint, hereafter "AC," at ¶¶ 2-4, 19-20, Doc. 8.)  Plaintiff was originally a 35% minority shareholder in the company while Mangieri held 65% of ESI's shares.  (Id. at ¶ 20.)  In addition to being the majority shareholder, Mangieri has served at all relevant times as the company's president, has managed ESI's day-to-day affairs, and has been a member of its board of directors.  (AC at ¶¶ 4-5, 20-21.)  Defendant Anthony Razzano is the Chief Financial Officer of ESI and has been a director since October 2012.  (AC at ¶¶ 6, 24.)  Since mid-to-late 2012, Razzano and his accounting firm have been responsible for managing the finances of ESI.  (Id. at ¶ 23.)  Defendant John J. Richardson is a director of ESI.  (Id. at ¶ 8.)  Defendants Daniel Columbus and Timothy Gatti allegedly are "representatives" of ESI.  (Id. at ¶¶ 10, 12.)

In 2012, Plaintiff filed a lawsuit against ESI, Mangieri, Razzano, Richardson, Columbus and Gatti, claiming (among other things) breaches of fiduciary duty and defamation related to Plaintiff's status as a minority shareholder of ESI.  (AC Ex. 2 at p. 1, Doc. 8-2.)  ESI then filed a lawsuit against Plaintiff and certain other parties asserting, among other things, trademark infringement and breaches of fiduciary duty.  (Id.)  On February 20, 2013, the parties entered into a Global Settlement Agreement ("GSA") as a means of resolving the two prior lawsuits. (AC at ¶ 41, AC Ex. 2.)  As part of the GSA, ESI agreed to pay Plaintiff $200,000.00 in exchange for the settlement and release of Plaintiff's claims.  (See AC Ex. 2 at ¶ 1.1.)

Contemporaneously with their execution of the GSA, Plaintiff, ESI, and Mangieri entered into a Stock Purchase Agreement ("SPA"), pursuant to which Plaintiff transferred his 35% interest in ESI to Mangieri for the sum of $575,000.00.  (AC ¶¶ at 41-42, 183, AC Ex. 1, Doc. 8-1.)  The SPA was signed by Plaintiff and also by Mangieri, Razzano and Richardson through a

document entitled "Action and Unanimous Written Consent of the Board of Directors." (See AC Ex. 1, Schedule V.) The GSA was appended to, and its terms were incorporated into, the SPA. (See AC, Ex. 1, Schedule II.)

The purchase price for Plaintiff's shares of ESI, as set forth in the SPA, was based almost entirely on a valuation of the company that ESI had commissioned from Peter D. Woodlock, a certified appraiser, at the request of Mangieri in 2012 (the "2012 Valuation"). (AC at ¶¶ 38, 40, 43.) The 2012 Valuation assigned a fair market value of $534,000 to Plaintiff's shares as of October 31, 2012, based largely upon financial information provided by the Defendants. (Id. at ¶¶ 38, 40, 43.) Plaintiff relied upon the information and averments in the 2012 Valuation when negotiating the sales price for his shares. (Id. at ¶ 44.) He now claims that Mangieri and Razzano intentionally manipulated the affairs and financial reporting of ESI in order to misrepresent the value of the company, and/or they negligently made misrepresentations or omissions in connection with the 2012 Valuation, such that Plaintiff was induced to sell his ownership shares at an artificially depressed price. (Id. at ¶¶ 99-115, 117-28.)

On September 15, 2014, Defendants provided Plaintiff a Schedule K-1 indicating his tax liability for his ownership interest in ESI relative to the 2013 tax year. (AC at ¶¶ 69, 136.) The K-1 was calculated based on Plaintiff's purported ownership interest in ESI as of May 14, 2013. (Id. at ¶ 71, 130.) Plaintiff claims that the actual closing date of the stock transfer was February 20, 2013, and therefore his basis should have been calculated as of that date. (Id. at ¶¶ 45-49, 71, 131.) Plaintiff claims also that the ordinary business income allocated to him in the K-1 represented a 98% increase in his tax liability as compared to 2012, despite the fact that he was a minority shareholder of ESI for only part of the 2013 tax year. (Id. at ¶ 72.) Plaintiff contends that he attempted to verify the accuracy of the Schedule K-1 prior to his tax filing deadline but,

because of Defendants' lack of cooperation, he was unable to do so. (Id. at ¶¶ 132-37.) As a result, Plaintiff claims he was forced to incur a greater tax liability than was warranted due to the inflated basis set forth in the K-1. (Id. at ¶¶ 138-39.)

Based on the foregoing events and allegations, Plaintiff commenced this lawsuit on December 4, 2014. The operative Amended Complaint (Doc. 8) sets forth claims for fraud (Count I), negligent misrepresentation (Count II), securities fraud (Count III), declaratory relief (Count IV), and breach of contract (Counts V, VI and VII).[1] On April 30, 2015, Defendants filed the pending motion to dismiss or, in the alternative, motion for a more definite statement (Doc. 12). The parties have filed their respective briefs (Docs. 13, 14), and the motion is ripe for disposition.

## ANALYSIS

1. Motion to Dismiss

*Counts I and II:*

In Counts I and II of the Amended Complaint, Plaintiff asserts claims against ESI, Mangieri and Razzano for fraud and negligent misrepresentation, respectively, based on the Defendants' conduct relative to the 2012 Valuation and their preparation of the Schedule K-1. To state a claim for fraudulent misrepresentation in Pennsylvania, a plaintiff must allege: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Berger v. Cushman & Wakefield of PA, Inc., Civil Action No. 13-5195, 2014 WL 2892408, at *3 (E.D. Pa. June 26, 2014) (citing David

---

[1] The Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1332.

Pflumm Paving & Excavating, Inc. v. Found. Servs. Co., 816 A.2d 1164, 1171 (Pa. Super. Ct. 2003)). To state a claim of negligent misrepresentation, a party must allege: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Euro Motorcars Germantown Inc. v. Manheim Remarketing, Inc., No. CIV.A. 13-7614, 2015 WL 798969, at *7, n.3 (E.D. Pa. Feb. 25, 2015) (citing Bilt–Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 277 (Pa. 2005)).

### a) Federal Rule of Civil Procedure 9(b)

Defendants contend that Count I of the Amended Complaint must be dismissed because Plaintiff has failed to plead fraud with the requisite particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure "serves to give defendants 'notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements.'" In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)). In order to meet the heightened pleading requirements of Rule 9(b), a plaintiff may plead with particularity the "'time, place and manner' of each of the defendants' fraudulent statements or actions." Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher, 635 F. Supp. 18, 22 (E.D. Pa. 1985) (quoting Fed. R. Civ. P. 9(b)). "A plaintiff is not, however, required to plead 'the date, place or time of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into [his/her] allegations.'" Le

Bars v. UBS AG, No. CIV. A. 12-424, 2013 WL 1819803, at *7 (W.D. Pa. Apr. 29, 2013)

(quoting Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir.1984),

and noting its holding that courts must apply heightened pleading standards of Rule 9(b) in

accordance with rules underlying purposes—to put defendant on notice of misconduct alleged

and to guard against "spurious charges of immoral or fraudulent behavior")).  See also Martrano

v. Quizno's Franchise Co., L.L.C., Civil Action No. 08-0932, 2009 WL 1704469, *6 (W.D. Pa.

June 15, 2009) (same).

    In this case, the averments in the Amended Complaint, when read in the context of the

2012 Valuation,[2] are sufficient to satisfy the heightened pleading standards of Rule 9(b).

Plaintiff's theory is that Mangieri and Razzano, both individually and on behalf of ESI,

intentionally and knowingly misrepresented the financial condition of ESI and supplied

misinformation to the appraiser in order to materially and adversely affect his valuation of the

company so that Plaintiff, in reliance on the valuation, would be induced to sell his shares at an

artificially deflated price.  (AC at ¶¶ 99-105.)  The 2012 Valuation indicates that the appraiser's

conclusions were based on "financial information and operational data provided to [him],"

without "any independent verification or confirmation" on his part of the data provided. (See

2012 Valuation at p.3, §1(G), Doc. 14-1.)  This information reportedly included "[t]he

Company's printed materials and other sales information" as well as "discussions with ...

Mangieri" concerning ESI, including its "current circumstances and future prospects." (Id. at p.

---

[2] Because the 2012 Valuation expressly is referred to and relied upon by Plaintiff in the Amended
Complaint, and because there appear to be no questions concerning the authenticity of the copy
that was incorporated into the record, the Court may consider that document without converting
the Defendants' motion to dismiss into a motion for summary judgment. See In Re Burlington
Coat Factories Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)( "[A] document integral to or
explicitly relied upon in the complaint may be considered without converting the motion [to
dismiss] into one for summary judgment.") (internal quotation marks and citation omitted)
(second alteration in the original).

4, §II, Nos. 2 and 7, Doc. 14-1.)  Plaintiff argues, and one may reasonably infer from the

Amended Complaint, that it was this information that Defendants are alleged to have

manipulated.  (See AC at ¶ 99 (alleging that Mangieri and Razzano, individually and on behalf of

ESI, "manipulated the affairs and financial reporting of ESI to misrepresent the value of the

company and cause Plaintiff to sell his ownership at an artificially lowered price")); (see id. at

¶ 100 (alleging that Mangieri and Razzano, individually and on behalf of ESI, intentionally and

knowingly misrepresented the financial condition of ESI, which in turn materially and adversely

affected the 2012 Valuation")).  Elsewhere in the Amended Complaint, Plaintiff avers that

Mangieri and Razzano supplied false information to the appraiser concerning ESI's "future

prospects, financial condition and potential sales opportunities."  (AC at ¶ 117.)  In this Court's

view, the foregoing language injects sufficient "precision" and a sufficient "measure of

substantiation" so as to "place the defendants on notice of the precise misconduct with which

they are charged, and to safeguard defendants against spurious charges of immoral and

fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791

(3d Cir. 1984).  Accordingly, Plaintiff's fraud claim, as pled, satisfies the objectives of Rule

9(b).[3]

**b)  The SPA's Integration Clause**

Defendants also argue that Counts I and II must be construed as "fraud in the

inducement" claims and, as such, they are barred by virtue of the parol evidence rule and the

SPA's integration clause.  Pennsylvania law holds that, "'[w]here prior fraudulent

representations are alleged, the parol evidence rule bars such representations where the written

agreement:  (1) contains terms which directly deal with the subject matter of the alleged oral

---

[3] The Court also notes that, because the case currently is sealed, there is no present threat of harm to the Defendants' reputation as a result of the Plaintiffs' allegations of wrongdoing.

representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause.'"  The Roskamp Institute, Inc. v. Alzheimer's Institute of Am., Inc., No. CV 15-3641, 2015 WL 6438093, at *8 (E.D. Pa. Oct. 23, 2015) (quoting Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 489 (E.D. Pa. 2009).  The SPA's integration clause states:

> [t]his Agreement (including the Schedules attached to this Agreement) and all documents and agreements referred to in this Agreement supersede all prior or contemporaneous understandings, agreements, negotiations and discussions, whether oral or written, between the parties concerning this subject matter and constitutes the entire agreement between the parties with regard to this subject matter.  The parties have not relied upon any promises, representations, warranties, agreements, covenants or undertakings, other than those expressly set forth or referred to herein.

(SPA at ¶ 9.8, Doc. 8-1.)  Defendants maintain that, because any representations contained in the 2012 Valuation were made or provided to Plaintiff before the SPA was signed, they cannot serve as the basis of Plaintiff's claims in Counts I and II.  Beyond this, Defendants argue that they had no duty to disclose any information to Plaintiff relative to the 2012 Valuation.  They point out that, whereas the SPA sets forth Plaintiff's express warranty that "no fact or information [is] known to [Plaintiff] with regard to the Common Stock which has not been disclosed to Purchaser which has or could have an adverse effect on Purchaser, the Common Stock, ESI or the Business" (SPA at ¶ 5.6), the SPA does not contain any such reciprocal warranty made on behalf of ESI or Mangieri.

Plaintiff counters that the SPA's integration clause must be read in conjunction with its indemnification clause and, when so read, the integration clause cannot be construed as precluding Plaintiff's claims in Counts I and II.  Paragraph 8.3 of the SPA, entitled "Indemnification by Purchaser," states, in relevant part, that Mangieri "agrees to indemnify" Plaintiff "against any and all damages… and any other expenses" incurred by Plaintiff "on

account of or incident or pursuant to: (i) breach of a material representation or warranty made by [Mangieri] in this Agreement, the collateral agreements *or in any other document delivered pursuant to or in connection with this Agreement…"* (SPA at ¶ 8.3 (emphasis added).) Plaintiff maintains that the 2012 Valuation is a "document delivered … in connection with" the SPA for purposes of paragraph 8.3 because it was generated specifically for the purpose of valuing his shares in anticipation of a buyout. (See 2012 Valuation at p. 1 § I(A) (indicating the appraiser's "understanding that this valuation is to be used to establish the value of Mr. Baher Abdelgawad's 35 percent interest in the Company").) Given this interpretation of paragraph 8.3, Plaintiff argues that he has an express right to pursue misrepresentation and/or fraud claims based on misrepresentations contained in the 2012 Valuation. Plaintiff further contends that, because the 2012 Valuation is a "document delivered … in connection with" the SPA for purposes of paragraph 8.3, it is also a "document … referred to in [the SPA]" for purposes of the integration clause at paragraph 9.8 and, as such, it is integrated into the SPA. Thus, Plaintiff argues that neither the SPA's integration clause nor the parol evidence rule bar his claims.

The effect of the SPA's integration clause on Counts I and II concerns matters of contract interpretation – specifically, whether the 2012 Valuation is a "document delivered... in connection with" the SPA. Under Pennsylvania law:

> [t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. Felte v. White, 451 Pa. 137, 302 A.2d 347, 351 (1973). The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 661 (1982). The whole instrument must be taken together in arriving at contractual intent. Felte, 302 A.2d at 351. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. Steuart, 444 A.2d at 662. "'When a writing is clear and unequivocal, its meaning must be determined by its contents alone.'" Felte, 302 A.2d at 351 (quoting East Crossroads Center Inc. v. Mellon Stuart Co., 416 Pa. 229, 205 A.2d 865, 866 (1965)).

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. Hutchison v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (1986). A contract contains an ambiguity "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Id. This question, however, is not resolved in a vacuum. Instead, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Madison Construc. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (Pa.1999). In the absence of an ambiguity, the plain meaning of the agreement will be enforced. Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 512 Pa. 420, 517 A.2d 910, 913 (1986). The meaning of an unambiguous written instrument presents a question of law for resolution by the court. Community College v. Community College, Society of the Faculty, 473 Pa. 576, 375 A.2d 1267, 1275 (1977).

Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429–30 (Pa. 2001) (citations and quotation marks omitted); see also Ramalingam v. Keller Williams Realty Grp., Inc., 121 A.3d 1034, 1046 (Pa. Super. Ct. 2015).

To prevail at this stage of the proceedings, Defendants must demonstrate that the SPA's integration clause unambiguously bars Plaintiffs' fraud and negligent misrepresentation claims to the extent they are based on Plaintiff's reliance on the 2012 Valuation. The Court is not persuaded that it has done so at this procedural juncture. As noted, the specific issue at hand is whether the 2012 Valuation is a "document delivered... in connection with the SPA" for purposes of the indemnity clause; if it is, then Plaintiff has alleged a plausible basis for concluding that the 2012 Valuation is a "document referred to" in the SPA and, therefore, is integrated into the SPA pursuant to the integration clause. Defendants contend that the 2012 Valuation is not a document delivered "pursuant to or in connection with" the SPA because it was provided to and relied upon by Plaintiff when negotiating the price of his stock before the price was set and the SPA signed. However, this line of reasoning involves factual allegations beyond the pleadings which are better evaluated at the summary judgment stage. See Murphy, 777 A.2d at 430 (determining whether a contract is ambiguous is not done in a vacuum but by

applying the subject terms to a particular set of facts); see also Masciantonio v. SWEPI LP, Civil

Action No. 4:13-cv-0797, 2014 WL 4441214, at *6 n. 5 (M.D. Pa. Sept. 9, 2014) (noting that

"[i]f a writing is not ambiguous, it is appropriate for a district court to resolve the issue of

contract interpretation as a matter of law, but typically on summary judgment rather than a

motion to dismiss").  Having reviewed the documents of record and having fully considered the

parties' respective arguments in this regard, the Court finds that, at this procedural juncture,

Plaintiff's interpretation of the SPA is facially plausible.  Accordingly, the Court will not dismiss

Counts I and II at this time based on the language of the SPA's integration clause.[4]

### c)  Justifiable Reliance

Defendants also challenge Plaintiff's averments relative to the element of justifiable

reliance.  Defendants argue that Plaintiff could not have justifiably relied on information

provided by them to the extent Plaintiff had an equal opportunity to ascertain the facts

underlying their representations.  (See Defs.' Br. Supp. Mot. Dismiss (Doc. 13) (citing Moore v.

Steinman Hardware Co., 179 A. 565, 566 (Pa. 1935), and Silverman v. Bell Savings and Loan

Ass'n, 533 A.2d 110, 115 (Pa. Super. Ct. 1987))).)  Relatedly, Defendants cite Binns v. Copper

---

[4]  It should be noted that paragraph 8.3 refers expressly and exclusively to indemnification of the "Purchaser" based on breaches of a material representation or warranty "made by Purchaser." Since the SPA clearly identifies Mangieri as the "Purchaser," it would appear that paragraph 8.3 affords Plaintiff indemnification rights only as against Mangieri individually.  Nevertheless, because Plaintiff's claims in Counts I and II are also premised, in part, on paragraph 8.1 of the SPA, and because the parties' briefs do not address either the legal effect of paragraph 8.1 or the ramifications of paragraph 8.3's limited application, the Court will not dismiss any part of Counts I or II at this time.

The Court further notes that Defendants have not specifically moved to dismiss Count II to the extent it is premised on alleged misinformation contained in the K-1 that was issued to Plaintiff for tax year 2013.  Accordingly, the Court need not consider that aspect of Plaintiff's negligent misrepresentation claim for present purposes.

Co., 6 A.2d 895 (Pa. 1939), for the proposition that opinions of value ordinarily cannot be relied on as an actionable basis of fraud.

The Pennsylvania Supreme Court has stated that "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." Toy v. Metro. Life Ins. Co., 928 A.2d 186, 208 (Pa. 2007) (citing Scaife Co. v. Rockwell–Standard Corp., 285 A.2d 451, 455 (Pa. 1971)). The court has further stated that the recipient of an allegedly fraudulent misrepresentation generally has no duty to investigate its falsity in order to show justifiable reliance thereon. See Berger v. Cushman & Wakefield of PA, Inc., No. Civ. A. 13-5195, 2014 WL 2892408, at *7 (E.D. Pa. June 26, 2014 )(citing Toy, 928 A.2d at 207). To the extent Plaintiff did have a duty to investigate in this case, an analysis of Defendants' justifiable reliance challenge will depend on, among other things, whether Plaintiff in fact had an equal opportunity to ascertain the facts bearing on the fair market value of his ESI shares as Defendants appear to suggest. At this point in the proceedings, Plaintiff has plausibly alleged otherwise. (See AC at ¶¶ 103, 124.) The issue of reliance must therefore be fleshed out with the benefit of fact discovery. Furthermore, it is not clear at this point that the alleged misrepresentations at issue can fairly be described as "mere assertions of value," as was the case in Binns. See Berger, 2014 WL 2892408, at *7 (distinguishing Binns as inapposite, in part, because it addressed "mere assertions of value" as opposed to "comprehensive appraisals"). Further record development will be necessary in order for this Court to determine if Binns is instructive in these proceedings.

**d) Materiality**

Finally, Defendants assert that the element of materiality has not been established by Plaintiff's averments. The Court disagrees, as Plaintiff has specifically alleged that the

misinformation supplied by Defendants relative to the 2012 Valuation was material to the appraiser's valuation of the Company and, ultimately, to the price for which Plaintiff was induced to sell his stock.  (See AC at ¶¶ 99, 100, 104, 109-11, 127.)  Like reliance, materiality is a factual issue the resolution of which will have to await further record development.  See Craftmatic Sec. Litig. V. Kraftsow, 890 F.2d 628, 641 (3d Cir. 1990) ("Only when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law.")(citations omitted).

In sum, Defendants have not proffered a persuasive reason for dismissal of Counts I and II of the Amended Complaint.  Their motion will therefore be denied with respect to Plaintiff's claims of common law fraud and negligent misrepresentation.

*Count III:*

Count III of the Amended Complaint asserts a claim against ESI and Mangieri individually for alleged securities fraud in violation of §10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  To state such a claim, a plaintiff must allege that:  (1) the defendant made a misstatement of material fact, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff reasonably relied, and (5) the plaintiff's reliance was the proximate cause of his injury.  In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (citations omitted); Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 208 (3d Cir. 2006).

**a) Rule 9(b) and the Integration Clause**

Defendants argue that Count III, like Plaintiff's common law fraud claim, should be dismissed because the alleged fraud has not been pled with the requisite particularity, see 15 U.S.C. § 78u-4(b), and because the parol evidence rule precludes Plaintiff from asserting that he

relied on representations outside of the SPA.  For the reasons previously discussed, the Court declines to dismiss Count III on these bases.

### b) Interstate Commerce

Defendants also move for dismissal on the grounds that the Amended Complaint fails to allege fraudulent conduct "by the use of any means or instrumentality of interstate commerce," as required by Rule 10b-5.  The Rule makes it unlawful for

> any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Upon review of the Amended Complaint, the Court finds that Plaintiff has plausibly alleged the use of "an instrumentality of interstate commerce."  For purposes of Rule 10b-5, "interstate commerce" includes "…commerce in securities or any transportation *or communication relating thereto* among the several States…" 15 U.S.C. § 77b(a)(7) (emphasis supplied).  In the Amended Complaint, Plaintiff alleges that the parties "engaged in" interstate commerce by virtue of their communications about Plaintiff's shares in connection with the allegedly deceptive buyout and/or they "affected a trade" of those shares in interstate commerce by virtue of their respective residences in different states and/or they "used" interstate commerce by virtue of Mangieri having sent his payment for the shares through interstate commerce.  (AC

at ¶¶ 149-51.)   The Court finds these allegations sufficient to establish Defendants' use of "an

instrumentality of interstate commerce" in connection with the alleged securities fraud.

Although Defendants object that Plaintiff has not alleged the existence of interstate

communications or activities that were *themselves* fraudulent or deceitful, this appears to

overstate the demands of Rule 10b-5's jurisdictional "interstate commerce" requirement.  As one

court has explained:

> it is well settled that the fraud itself need not be transmitted through the
> jurisdictional means.  All that is necessary is that the designated means be used in
> some phase of the transaction, which need not be the part in which the fraud occurs.
> … In other words, if a single telephone is used to call the defendants to a meeting
> at which they engage in fraudulent activity, the jurisdictional element is satisfied.

Richter v. Achs, 962 F. Supp. 31, 33 (S.D.N.Y. 1997) (internal citation and quotation marks

omitted).

Defendants also object that Plaintiff could not have sent shares in interstate commerce or

communicated about them, because no stock certificates were ever issued by ESI; however, it is

not clear at this procedural juncture that the lack of physical stock certificates is dispositive of

Plaintiff's claim.  Plaintiff has alleged that his shares of ESI were "securities" within the

meaning of the Act inasmuch as they represented an "interest" in ESI that was a "transferable

share."  (AC at ¶147.)  See 15 U.S.C.A § 77b(a)(1) (defining "security" to include any

"transferable share…or, in general, any interest or instrument commonly known as a

"security"…).  As Plaintiff points out, courts have applied an "economic reality" standard to

determine whether an individual's interest in a business meets the definition of a "security."  See

United Housing Foundation v. Forman, 421 U.S. 837, 848 (1975) ("[I]in searching for the

meaning and scope of the word 'security' in the Act, form should be disregarded for substance

and the emphasis should be on economic reality.")(alteration in the original) (internal quotation

marks and citation omitted).  See also Cole v. Ford Motor Co., 566 F. Supp. 558, 564-65 (W.D.

Pa. 1983) (applying "economic realities" test and considering whether the shares in question possessed the "significant attributes typically associated with stock," such as the holder's "right to receive dividends contingent upon an apportionment of profits," negotiability, voting rights, and the capacity to appreciate in value). Whether Mangieri's buyout of Plaintiff's interest in ESI constituted a sale of "securities" is a question involving factual inquiries that cannot be definitively resolved at this stage of the proceedings. Accordingly, Defendants' motion to dismiss Count III will be denied without prejudice to Defendants' right to raise the issue at a later procedural juncture.

*Count IV*

In Count IV, Plaintiff seeks a declaratory judgment against all Defendants establishing that: (a) he has a right to access certain corporate documentation pursuant to § 7.3.2 and § 9.2 of the SPA; (b) his final basis for purposes of his 2013 Schedule K-1 must be calculated with reference to the time period January 1, 2013 to February 20, 2013; and (c) he is entitled to indemnification of all costs recoverable under the SPA. Defendants urge the Court to dismiss Count IV in its entirety because, they say, it is duplicative of the breach of contract claims at Counts V and VI. Alternatively, Defendants argue that Count IV should be dismissed as against Defendants Columbus, Gatti, Richardson and Razzano because none of these individuals is a party to the SPA.

"Under 28 U.S.C. § 2201, a district court is vested with discretionary authority to determine whether to preside over a declaratory judgment action." ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC, No. 2:14-CV-72, 2014 WL 6607280, at *8 (W.D. Pa. Nov. 19, 2014))(citing State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000) and Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)). Thus, "[i]f a district court, in the sound exercise of

its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." Wilton, 515 U.S. at 288. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id.

Here, as Defendants note, Counts V and VI are pled "in the alternative" to Count IV; moreover, the contractual obligations at issue in Counts V and VI are the same as those at issue in Count IV. Nevertheless, the relief sought in these counts is conceptually distinct, as Count IV ostensibly seeks a declaration of Plaintiff's rights under certain provisions of the SPA, while Counts V and VI seek damages for the Defendants' alleged contractual breaches. To the extent any duplicity exists as between the declaratory judgment claim and the breach of contract claims, this can be resolved at a later point in time following discovery. At that time, the Court will be better able to determine whether Count IV serves any meaningful purpose in the context of this lawsuit. In the meantime, inclusion of that count should not result in any significant prejudice to those individuals who are properly named defendants in Count IV.

That having been said, the Court agrees that Defendants Columbus and Gatti should be dismissed from Count IV. In determining the necessary parties to a declaratory judgment claim, courts look to Federal Rule of Civil Procedure 19, which addresses general principles of joinder. See Special Jet Servs., Inc. v. Fed. Ins. Co., 83 F.R.D. 596, 597-98 (W.D. Pa. 1979) ("There are no special provisions detailing a necessary party in a declaratory judgment action; the general principles of joinder govern.") (citing State Farm Mutual Auto. Ins. Co. v. Mid-Continent Cas. Co., 518 F.2d 292 (10th Cir. 1975); Bituminous Ins. Cos. v. PA Mfg. Ass'n Ins. Co., 427 F.

Supp. 539 (E.D.Pa. 1976); 6A Moore's Federal Practice ¶ 57.25 (2d ed. 1979)). Rule 19(a) (1) of the Federal Rules of Civil Procedure provides that:

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1).

Here, Plaintiff has made no attempt to show that Columbus or Gatti satisfy the requirements of Rule 19(a) as it relates to Count IV of the Amended Complaint. Plaintiff's only argument is that "[t]he GSA incorporated the SPA and therefore declaratory relief relating to the SPA could potentially affect the rights of the parties to the GSA, [and] this would include ESI and the individuals Columbus, Gatti, Richardson, Razzano and Mangieri." (Pl.'s Br. Opp. Mot. Dismiss at 18, Doc. 14.) This argument is not persuasive. The declaratory relief sought in Count IV relates solely to rights asserted by Plaintiff under the SPA, and neither Columbus nor Gatti were signatories to that particular agreement. Although the GSA, the SPA and the parties' Memorandum of Understanding collectively set forth the parties' "complete understanding of [their] agreement," (AC Ex. 1 at p. 1, Doc. 8-1; AC Ex. 2 at p. 1, Doc. 8-2), this does not mean that Columbus and Gatti are personally obligated by the terms of the SPA. Rather, the GSA and SPA were separately executed by particular parties, and the Court will construe the obligations arising under the SPA as affecting only those parties who were actual signatories to that

agreement.  Accordingly, the Court finds that the respective interests of Columbus and Gatti in Count IV of the Amended Complaint are not sufficient to satisfy any of the bases for joinder that are set forth in Rule 19(a).  Plaintiffs' declaratory judgment claims against Columbus and Gatti will therefore be dismissed.

On the other hand, the Court will not presently dismiss Plaintiff's claims against Richardson or Razzano.  Both of these Defendants signed the SPA and, although Defendants contend that this was done solely in their capacities as directors of ESI without incurring any personal liability on their part, the Court finds that the merits of this issue is best resolved on a more developed record.  Accordingly, the claims against Richardson and Razzano may proceed at the present time.

   *Counts V through VII*:

Counts V through VII of the Amended Complaint involve Plaintiff's claims for breach of the SPA.  Count V asserts a breach of contract claim against ESI and Mangieri based on the Defendants' failure to provide certain documents and cooperation in tax matters as allegedly required by §§ 7.3.2 and 9.2 of the SPA.  Count VI asserts a breach of contract claim against ESI and Mangieri based on the Defendants' alleged failure to properly compute Plaintiff's final basis for purposes of his Schedule K-1 for tax year 2013.

Defendants seek to dismiss the claims against Mangieri individually in Counts V and VI on the grounds that Mangieri has no independent authority in his personal capacity to perform the contractual duties at issue in those counts.  Here again, the Court finds that this issue involves factual inquiries that are more properly resolved at the summary judgment stage with the benefit of a fully developed evidentiary record.  The claims against Mangieri in Counts V and VI can therefore proceed forward.

Count VII asserts a breach of contract claim against Mangieri based on Mangieri's alleged failure to indemnify Plaintiff for losses allegedly incurred as a result of Mangieri's breaches of §§7.3.2 and 9.2 and his failure to make timely payments on his promissory note. Thus, Plaintiff asserts in Count VII that Mangieri breached his duties under the Indemnification Clause at ¶8.3 of the SPA.

Defendants argue that this claim must be dismissed because the Indemnification Clause does not apply to costs and expenses incurred by Plaintiff as the result of breaches of the SPA by Mangieri himself. Without citing any authority, Defendants argue that, "[e]ssentially, indemnification involves the contractual obligation to reimburse a party for damages or losses occasioned by that party as the result of the claim of a third party, when the party agreeing to pay is not otherwise legally obligated to do so." (Defs. Br. Supp. Mot. Dismiss at 19, Doc. 13.) Defendants therefore conclude that ¶ 8.3 of the SPA "may only be construed to require Mangieri to indemnify Abdelgawad for losses occasioned by claims against him by third parties incident or pursuant to those matters set forth in Section 8.3," as opposed to "costs and expenses incurred by Abdelgawad for breaches of the SPA by the very parties to the Agreement." (Id.) Defendants further argue that a claim for indemnification is premature where, as here, it is asserted "before payment is made and there is no prejudice to the party seeking indemnity prior to payment." (Defs.' Br. Supp. Mot. Dismiss at 20, Doc. 13) (citing McClure v. Deerland Corp., 585 A.2d19 (Pa. Super. Ct. 1991), and Fleck v. KOI Sylvan Pools, Inc., 981 F.2d 107 (3d Cir. 1992)).

Defendants' motion to dismiss Count VII will be denied. Although the Court has some doubts as to whether the indemnification clause extends to first-party claims, it declines to rule at this preliminary stage that such claims are unambiguously precluded by paragraph 8.3. In relevant part, the clause sets forth Mangieri's agreement to "indemnify…Shareholder

[Plaintiff]… from and against any and all … costs… and any other expenses, including reasonable attorneys' fees and other costs… incurred by [Plaintiff] on account of… (i) breach of a material representation or warranty made by [Mangieri]" or "(ii) breach of a material … obligation" by Mangieri.  (SPA at ¶ 8.3.)  For present purposes, Plaintiff has plausibly averred that this language extends to losses incurred by Mangieri's breaches of the SPA.  In addition, paragraph 8.4 -- which addresses the parties' agreed upon indemnification procedures – appears to contemplate that indemnification may occur prior to the indemnitee making payment on the underlying loss.  (See SPA at ¶ 8.4.)  As the Court previously observed in relation to its ruling on Counts I and II, the intended application of the SPA's Indemnification Clause will be best determined in this case by applying the clause to the relevant facts after such facts have been fully developed through discovery.  Moreover, any questions as to whether Plaintiff has been prejudiced by the underlying losses he alleges must be addressed on a more complete factual record.  Count VII may therefore proceed forward at this time.

    2. <u>Motion for a More Definite Statement</u>

       As an alternative to their motion to dismiss, Defendants request that Plaintiff be required to provide a more definite statement of:  (a) his fraud claims at Counts I-III of the Amended Complaint and (b) his undisclosed damages.  <u>See</u> Fed. R. Civ. P. 9(b) and (g).  Defendants' challenge to the fraud claims involve the same arguments proffered in support of their motion to dismiss based on the heightened pleading requirements of Rule 9(b) and the PSLRA.  As the Court has found Plaintiff's averments to be sufficient, the motion for a more definite statement will be denied.

       Defendants' motion will also be denied as it relates to Plaintiff's alleged damages. Defendants' specific objection is that Plaintiff has failed to disclose the damages he allegedly

suffered as the result of Mangieri's failure to make prompt payments on the $75,000 promissory note, as referred to in Count VII. Defendants further object that Plaintiff has claimed he "continues to be financially harmed" without disclosing the nature of the harm or quantifying his damages, if any. However, Rule 9(g) requires only that, "[i]f an item of special damages is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). "*Special*, as contradistinguished from *general* damage, is that which is the natural, but not the necessary, consequence of the act complained of." Roberts v. Graham, 73 U.S. 578, 579 (1867) (emphasis in the original); see also Wright & Miller, Federal Practice & Procedure § 1310, at 346-47 (3d ed. 2004) ("Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case."); Huyler's v. Ritz–Carlton Rest. & Hotel Co., 6 F.2d 404, 406 (D. Del. 1925) ("Both [special and general] damages must be the natural and proximate consequence of the breach complained of, but general damages are such as inevitably follow, while special damages are such as may or may not follow the breach.") (citations omitted). Here, Plaintiff denies that he has specifically sought special damages, and Defendants have cited no authority suggesting that the damages in question are properly characterized as "special damages." Accordingly, the Court is not persuaded that Plaintiff is in violation of Rule 9(g)'s pleading requirements. To the extent Defendants seek more specific information concerning Plaintiffs' alleged damages, they can explore these issues in discovery.

## II. ORDER

Consistent with the foregoing, Defendants' motion to dismiss (Doc. 12) is **GRANTED** with respect to Plaintiff's declaratory judgment claims against Defendants Columbus and Gatti in Count IV of the Amended Complaint and is **DENIED** in all other respects. Except to the extent

that Defendants' motion is premised on Rule 9 of the Federal Rules of Civil Procedures, the denial of Defendants' motion to dismiss shall be without prejudice to Defendants' right to reassert their arguments, if appropriate, on a more fully developed evidentiary record. Defendants' alternative motion for a more definite statement is **DENIED**.

IT IS SO ORDERED.


December 11, 2015                                        s\Cathy Bissoon
                                                        Cathy Bissoon
                                                        United States District Judge


cc (via ECF email notification):

All counsel of record.