# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAHER ABDELGAWAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 14-1641 |
| v. ) | |
| ) | Judge Cathy Bissoon |
| MARK MANGIERI, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Baher Abdelgawad's Motion for Partial Summary Judgment (Doc. 65) and Defendant Mark Mangieri's Motion for Summary Judgment (Doc. 69). For the reasons below, Plaintiff's Motion for Partial Summary Judgment will be DENIED and Defendant's Motion for Summary Judgment will be DENIED in part and GRANTED in part. Specifically, Defendant's Motion for Summary Judgment is GRANTED as to Counts I, II and III and DENIED as to Counts IV, V, VI and VII of Plaintiff's Amended Complaint. Plaintiff's Partial Motion for Summary Judgment is DENIED as to Counts II, V, VI and VII.

## BACKGROUND

Due to the lengthy factual and procedural history in this matter, the Court will recite only those facts that are material to the Court's ruling on the pending motions for summary judgment. Plaintiff Baher Abdelgawad, a California citizen, and Defendant Mark Mangieri, a citizen of Pennsylvania, were joint shareholders of a Pennsylvania corporation formed on or about June 17, 2005, and known as Exclusive Supplements, Inc. ("ESI"). (Amended Complaint, hereafter "AC," at ¶¶ 2-4, 19-22, Doc. 8; Mangieri's Answer to Amended Complaint, hereafter "MAAC," at ¶¶ 2-4, 19-22, Doc. 37.) Plaintiff was originally a 35% minority shareholder in the company,

1

while Defendant Mangieri was originally a 65% majority shareholder and served at all relevant times as ESI's president, a member of its board of directors and its employee. (AC at ¶¶ 4-5, 19-20; MAAC at ¶¶ 4-5, 19-20.)

In 2012, Plaintiff filed a lawsuit against Mangieri and others claiming breaches of fiduciary duty and defamation related to Plaintiff's status as a minority shareholder of ESI. (AC Ex. 2 at p. 1.) ESI then filed a lawsuit against Plaintiff and others asserting trademark infringement and breaches of fiduciary duty. (Id.) On February 20, 2013, Plaintiff and Mangieri, along with several others, entered into two related contracts that provide the basis for the instant dispute: a Global Settlement Agreement ("GSA" AC Ex. 2, Doc. 8-2) and a Stock Purchase Agreement ("SPA" AC Ex. 1, Doc. 8-1). (AC at ¶ 41; MAAC at ¶ 41.) The purpose of the GSA and SPA was to resolve the two prior lawsuits. As part of the GSA, ESI agreed to pay Plaintiff $200,000 in exchange for the settlement and release of Plaintiff's claims. (AC Ex. 2 at ¶ 1.1.) The GSA required Mangieri, in his personal capacity, to guaranty payment of this amount, and Mangieri contemporaneously executed a Guaranty of Payment of Debt Agreement. (Id. at ¶ 1.3; id. at p. 13.)

Under the SPA, executed by Plaintiff, ESI, and Mangieri, Plaintiff transferred his 35% interest in ESI to Mangieri for the sum of $575,000.00. (AC at ¶¶ 41-42, 183; MAAC at ¶¶ 41-42, 183; AC Ex. 1.) The GSA was appended to, and its terms were incorporated into, the SPA. (See AC Ex. 1, Schedule II.)

The SPA contained provisions concerning the preparation of tax documents, access to records, notification of audits, and indemnification. (See AC Ex. 1 at ¶¶ 7.3, 8.2, 8.3.) The SPA required Mangieri's and ESI's assistance in preparing Plaintiff's tax returns. (Ex. 1, AC at ¶ 7.3.) The agreement also required Mangieri and ESI to give Plaintiff access to records relating to

2

ESI's taxes and common stock.  (Id.)  Finally, the SPA contained mutual indemnification provisions, whereby Plaintiff and Mangieri indemnified each other for costs incident to a "breach of a material representation or warranty made by [the other party] in this Agreement, the collateral agreements or in any other document delivered pursuant to or in connection with this Agreement or the Collateral Agreement."  (AC at ¶ 55; MAAC at ¶ 55; AC Ex. 1 at ¶¶ 8.2, 8.3.)

The purchase price for Plaintiff's shares of ESI, as set forth in the SPA, was based almost entirely on a valuation of the company by Dr. Peter Woodlock that ESI had commissioned at the request of Mangieri in 2012 (the "2012 Valuation").  (AC at ¶¶ 38, 40, 43; MAAC at ¶¶ 38, 40, 43.)  The 2012 Valuation assigned a Fair Market Value of $534,000 to Plaintiff's shares as of October 31, 2012, based largely upon financial information provided by Mangieri and others at ESI.  (Id.)  Plaintiff relied upon the information and averments in the 2012 Valuation when negotiating the sales price for his shares.  (Id. at ¶ 44.)  He claims that Mangieri intentionally manipulated the affairs and financial reporting of ESI in order to misrepresent the value of the company, and/or negligently made misrepresentations or omissions in connection with the 2012 Valuation, such that Plaintiff was induced to sell his ownership shares at an artificially depressed price.  (Id. at ¶¶ 99-115, 117-28.)

Following the execution of the GSA and the SPA, Plaintiff requested a completed Schedule K-1 Form (the "K-1") from ESI indicating his tax liability for his ownership interest in ESI relative to the 2013 tax year.  (See AC at ¶¶ 69-70; MAAC at ¶¶ 69-70.)  On September 15, 2014, Mangieri and others provided Plaintiff a K-1, which was calculated based on Plaintiff's purported ownership interest in ESI as of May 14, 2013 (AC at ¶¶ 71, 130; MAAC at ¶¶ 71, 130.)  Plaintiff claims that the actual closing date of the stock transfer was February 20, 2013, and therefore his basis should have been calculated as of that date.  (AC at ¶¶ 45-49, 71, 131.)

3

Plaintiff also claims that the ordinary business income allocated to him in the K-1 represented a 98% increase in his tax liability as compared to 2012, despite the fact that he was a minority shareholder of ESI for only part of the 2013 tax year. (Id. at ¶ 72.) Plaintiff contends that he attempted to verify the accuracy of the Schedule K-1 prior to his tax filing deadline but, because of a lack of cooperation, he was unable to do so. (Id. at ¶¶ 132-37.) As a result, Plaintiff claims he was forced to incur a greater tax liability than was warranted due to the inflated basis set forth in the K-1. (Id. at ¶¶ 138-39.)

Based on the foregoing events and allegations, Plaintiff commenced this lawsuit on December 4, 2014. The operative Amended Complaint (Doc. 8) sets forth claims for fraud (Count I), negligent misrepresentation (Count II), securities fraud (Count III), declaratory relief (Count IV), and breach of contract (Counts V, VI and VII).[1] On December 11, 2015, this Court issued a Memorandum Order (Doc. 17) denying Defendants' joint motion to dismiss the Amended Complaint in all respects material to the action against Mangieri.[2] Following discovery and settlement discussions, Plaintiff filed a Partial Motion for Summary Judgment on May 22, 2017 (hereafter "Plaintiff's SJM," Doc. 65) moving for judgment against Mangieri as to Counts II, V, VI and VII. On the same day, Mangieri filed a Motion for Summary Judgment (hereafter "Mangieri's SJM," Doc. 69) moving for judgment against Plaintiff on all Counts. The parties have filed their respective briefs, statements of material facts, responses and replies

---

[1] The Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1332.
[2] Plaintiff's claims against Defendants Anthony Razzano ("Razzano"), the Chief Financial Officer of ESI and a director since 2012; John J. Richardson, a director of ESI; and Daniel Columbus and Timothy Gatti, alleged representatives of ESI (AC at ¶¶ 6-13), have been settled or dismissed. (See Memorandum and Order dated December 11, 2015, Doc. 17; Order Approving Stipulation of Dismissal with Prejudice, Doc. 81.) Default judgment in favor of Plaintiff has been entered against ESI. (See Clerk's Entry of Default, Doc. 40.) Mangieri is the only remaining Defendant against whom claims are pending.

4

(Docs. 66-67, 70-75, 77-78) and the pending motions for summary judgment are now ripe for disposition.

**ANALYSIS**[3]

    *1. Spoliation sanctions are inappropriate*

As the Court will discuss below, several of Plaintiff's claims depend on Mangieri's alleged misrepresentations, which, according to Plaintiff, caused the 2012 Valuation to understate the true value of Plaintiff's shares and caused the K-1 to overstate Plaintiff's tax liability for 2013. Plaintiff alleges that—due to Mangieri's delivery of digital QuickBooks files in inaccessible form, passive destruction of relevant documents during ESI's eviction, and failure to deliver requested bank statements—he has been unable to assess the accuracy of the conclusions in the 2012 Valuation and the K-1, which would be necessary for determining the existence of misrepresentations. (Plaintiff's Brief in Support of its Partial Motion for Summary Judgment, hereafter "Plaintiff's SJ Brief," p. 10, Doc. 66; Plaintiff's Response to Defendant Mangieri's Concise Statement of Facts, hereafter "Response to Mangieri's Facts," at ¶¶ 67-71, Doc. 72.) Plaintiff thus raises a spoliation argument as to a combination of paper and electronic documents. While the Court agrees with Plaintiff that Defendant has not met his obligation to

---

[3] Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on the pending motion for summary judgment, the Court must view the facts, and any reasonable inferences arising therefrom, in the light most favorable to the non-moving party. See Moody v. Atlantic City Bd. of Educ., 2017 WL 3881957, at *1 n.1 (3d Cir. Sept. 6, 2017) (citing Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005)).

5

produce relevant evidence, and has committed spoliation, the Court finds that no sanctions are appropriate in this case for the reasons below.

First, the Court may presume that the missing electronic documents contain information unfavorable to Mangieri only if Mangieri acted with the intent to deprive Plaintiff of the information's use in litigation. Specifically, under Federal Rule of Civil Procedure 37(e):[4]

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) *only* upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     (A) presume that the lost information was unfavorable to the party;
>     . . . .

(emphasis added). Based on the totality of the evidence, the Court finds that Mangieri did not act with the intent to deprive Plaintiff of the use of information contained in the missing QuickBooks files, and other potentially discoverable digital files, in this litigation. Mangieri has credibly stated that he has complied, to the best of his abilities, with Plaintiff's discovery requests. (See Mangieri's SJM at ¶¶ 60-63.) Additionally, Plaintiff's most recent affidavit concerning the QuickBooks files supports Mangieri's intent, albeit ineffectual, to provide Plaintiff with access to his files. (Plaintiff's Facts, Ex. A6, Affidavit of Jeffrey Steigler dated June 21, 2017, at ¶¶ 7-9 ("I was provided another version of QuickBooks on or about March 10, 2017. . . . I was able to enter and accept the credentials provided . . . . However, I was not able to

---

[4] The current Rule became effective December 1, 2015 and applies to all proceedings pending as of that date insofar as just and practicable. Accurso v. Infra-Red Services, Inc., 160 F. Supp. 3d 612, 618 n.6 (E.D. Pa. 2016). While neither party has addressed the applicability of Rule 37 to these proceedings, the Court "finds that the amendment to Rule 37(e) is procedural in nature and that it is just and practicable to apply this rule, as amended" to these proceedings. Id.

open the March 10, 2017 as opening the file would require an update to a newer version of QuickBooks, which could have potentially caused changes to the contents of the file.").)  Because Mangieri did not act with the intent to deprive Plaintiff of access to the lost electronic materials, the Court may not presume that the lost information is unfavorable to Mangieri.

The Court may, however, upon finding that Mangieri failed to take reasonable steps to preserve these documents, order lesser measures that are no greater than necessary to cure the prejudice to Plaintiff.  See Fed. R. Civ. Pro. 37(e)(1)-(2).  As of December 2014, Mangieri had notice of this lawsuit and the documents that Plaintiff was seeking in discovery, including the QuickBooks back-up files containing the accounting records that Plaintiff seeks; yet Mangieri did not act to preserve this information from destruction when he had access to ESI's premises.  (Plaintiff's SJ Brief, p. 10; Ex. A2, Response to Mangieri's Facts, p. 13).  Thus, the Court finds that Mangieri failed to take reasonable steps to preserve these documents, such as uploading them to a remote server or downloading them to a separate hard drive.  Nonetheless, in the absence of any request from Plaintiff for a proportionate measure to cure the prejudice and in light of Mangieri's good faith attempts to provide access, the Court finds that no sanction is appropriate as to the lost electronic documents.

As to non-electronic documents missing from Defendant's production, a similar logic applies and the Court will not sanction Mangieri.  "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party."  Bull v. United Parcel Service, Inc., 665 F.3d 68, 73 (3d Cir. 2012).  The factors that determine appropriate sanctions for spoliation are: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by

the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

Plaintiff has established the elements of spoliation for several missing physical documents on Plaintiff's production list, including bank statements that were either destroyed during ESI's eviction or were within Mangieri's control to produce. (Compare Ex. A3, Response to Mangieri's Facts, at ¶¶ 7-8 (requesting Mangieri's production of ESI's bank statements and bank reconciliations, to which Mangieri responds "Most all paper documentation was lost in the transition of shares back to Mangieri."), with Mangieri's Facts, at ¶¶ 68-70 (wherein Mangieri discloses that ESI's bank records were attainable to him)). Specifically, these bank statements were within Mangieri's control, would be relevant to detecting the existence of misrepresentations underlying the 2012 Valuation and the K-1 tax basis for 2013, they were not produced, and Mangieri was on notice of his duty to produce them via Plaintiff's production request.

To determine the appropriate sanction, if any, for this spoliation, the Court must look to three factors: Mangieri's degree of fault, the prejudice to Plaintiff and the degree to which a proposed sanction is the minimal measure needed to cure the prejudice to Plaintiff. See Schmid, 13 F.3d at 79. As with Mangieri's failure to produce relevant electronic documents, the Court finds that Mangieri's degree of culpability at to the missing physical documents was minimal. Plaintiff's evidence shows that Mangieri tried to assist Plaintiff and did not deliberately attempt to thwart discovery; rather, Mangieri misunderstood the extent of his obligation to secure copies of bank documents that were not in his physical possession. (E.g., Ex. A3, Response to

Mangieri's Facts, at ¶¶ 7-8 ("Mangieri is not in possession of such information [i.e., ESI's Bank Statements and reconciliations].").) As to the degree of prejudice to Plaintiff, if these bank statements were essential to Plaintiff's case, Plaintiff had the opportunity to move this Court for an order compelling their production or to subpoena the banks for these documents. Plaintiff's obligation to diligently prosecute his case does not cease merely because Mangieri failed to uphold his duty to produce relevant statements. Lastly, as to the degree to which a lesser sanction than that proposed by Plaintiff (an inference against Mangieri) would cure the prejudicial effect of Mangieri's spoliation, the Court cannot conceive of a lesser sanction and is reluctant to issue a sanction where Plaintiff could have cured the prejudice through diligent prosecution. As noted, Plaintiff did not move to compel these documents, but now requests that the Court assume the missing documents would demonstrate misrepresentations by Mangieri. Because all three factors above counsel against sanctions, the Court declines Plaintiff's request for a negative inference.

Thus, the Court will proceed to the merits of Plaintiff's claims without presuming that the missing documents contain information unfavorable to Mangieri.

*2. Fraud, Negligent Misrepresentation and Securities Fraud (Counts I, II and III)*[5]

In Counts I, II and III of the Amended Complaint, Plaintiff asserts claims against Mangieri for fraud, negligent misrepresentation and securities fraud, respectively, based on Mangieri's alleged misrepresentations underlying the preparation of the 2012 Valuation and the K-1.[6]

Under Pennsylvania law, fraud consists of: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 207 (1994); Berger v. Cushman & Wakefield of PA, Inc., 2014 WL 2892408, at *3 (E.D. Pa. June 26, 2014) (citing David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co., 816 A.2d 1164, 1171 (Pa. Super. Ct. 2003)).

Similarly, negligent misrepresentation occurs when there is: (1) a misrepresentation of material fact; (2) made when the representor either knows or ought to have known of its falsity;

---

[5] The Court must briefly address Defendant's contention that the terms of parties' 2013 settlement (the GSA and the SPA) bar claims based on representations in the 2012 Valuation. (Defendants' Motion to Dismiss, hereafter "MTD," at ¶¶ 41-49, Doc. 12.) Specifically, Defendant contends that these claims are barred by the parol evidence rule in light of the SPA's integration clause. While this Court addressed Defendant's parol evidence argument previously in its December 11, 2015 Memorandum Order denying Defendants' Motion to Dismiss, it noted then that issues of contract interpretation involving factual allegations beyond the pleadings are better evaluated at the summary judgment stage. See Masciantonio v. SWEPI LP, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014). Now able to address the complete factual record in this case, the Court finds that there is no need to decide whether the parol evidence rule bars Plaintiff's claims in Counts I, II and III based on the 2012 Valuation because, assuming these claims are allowed, Plaintiff has not met his burden to evidence them.

[6] As noted above, Plaintiff's claims against other Defendants have been resolved through dismissal, default, or settlement. Plaintiff's claims of fraud (Count I) and securities fraud (Count III) concern only the 2012 Valuation; Plaintiff's claim of negligent misrepresentation (Count II) concerns both the 2012 Valuation and the K-1.

(3) with an intent to induce another to act on it; and (4) injury results to the party acting in justifiable reliance on the misrepresentation. Gibbs, 538 Pa. at 210; see also Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., 700 F. Supp. 2d 720, 732-33 (W.D. Pa. 2010).

Under the federal Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, securities fraud requires that: (1) the defendant made a misrepresentation of material fact, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff reasonably relied, and (5) the plaintiff's reliance was the proximate cause of his injury. In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (citations omitted); Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 208 (3d Cir. 2006).

Mangieri has moved for summary judgment against Plaintiff's claims of fraud and securities fraud and both parties have moved for summary judgment on Plaintiff's claim of negligent misrepresentation. Plaintiff bears the burden at this stage of the litigation of setting forth evidence to establish his claims. For each claim, absent evidence supporting each element, the Court may grant Mangieri's motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (on issues for which the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"); cf. Nkanseh v. Aiyegbusi, 2017 WL 4387003, at *4 (E.D. Pa. Oct. 2, 2017) (Plaintiff's lack of evidence failed to satisfy burden of showing misrepresentation element of fraud claim on summary judgment).

The existence of a misrepresentation is a core element of fraud and negligent misrepresentation under Pennsylvania law, as well as securities fraud under the Securities and Exchange Act. Plaintiff contends that Mangieri made two relevant categories of

11

misrepresentations, namely, misrepresentations to Dr. Peter Woodlock that underlie his 2012 Valuation and misrepresentations underlying the K-1 concerning Plaintiff's tax basis for 2013. (AC at ¶¶ 99-100, 129-134.) The Court will take each category in turn, beginning with the 2012 Valuation.

*(a) Existence of misrepresentations, by Mangieri, underlying the 2012 Valuation*

The undisputed facts establish that ESI, at the request of Mangieri, commissioned the 2012 Valuation to determine the fair market value of Plaintiff's shares of ESI. (Plaintiff's Concise Statement of Material Facts, hereafter "Plaintiff's Facts," at ¶ 4, Doc. 67). Further, they establish that this valuation projected that Plaintiff's shares would hold a Fair Market Value of $534,000. (Id. at ¶ 5). In support of his claim that Mangieri misrepresented ESI's financial information to Dr. Woodlock (in order to artificially lower the valuation), Plaintiff provides evidence that the first draft of the valuation contained a "Fair Value," though not a Fair Market Value, of $678,300 and that Mangieri admits to offering guidance to Dr. Woodlock after the first draft had been prepared. (Id. at ¶ 7-8.) Plaintiff does not offer evidence as to what misrepresentations may have been contained in communications between Mangieri and Woodlock, but relies on circumstantial inferences from the facts above, including the difference between $534,000 (Fair Market Value in the final valuation) and $678,300 (Fair Value in the draft valuation).

These facts—without more—have no tendency to show that Mangieri misrepresented information to Dr. Woodlock. That Mangieri, as an officer of ESI, communicated with Dr. Woodlock during his valuation process does not tend to show that the information Dr. Woodlock received was inaccurate. Further, the fact that the draft valuation listed a "Fair Value" considerably higher than the final "Fair Market Value" lends no support to Plaintiff's theory that

a misrepresentation by Defendant Mangieri's was responsible for this difference in value, if indeed there was such a difference.[7] To the contrary, Mangieri maintains that Mr. Woodlock used ESI's raw data to calculate his valuation, and Plaintiff has submitted no evidence to suggest otherwise, other than speculative assertions. (See Mangieri's Summary Judgment Brief, hereafter "Mangieri's SJ Brief," pp. 3, 5, Doc. 70.)

Therefore, as to the alleged misrepresentations underlying the 2012 Valuation, Plaintiff has provided no evidence that Mangieri misrepresented information to Dr. Woodlock. Because Plaintiff has not sustained his burden to submit evidence supporting the existence of misrepresentations by Mangieri feeding into the 2012 Valuation, Defendant's Motion for Summary Judgment against Plaintiff's claims of fraud, negligent misrepresentation and securities fraud is GRANTED to the extent Plaintiff's claims rely on misrepresentations underlying the 2012 Valuation.

*(b) Existence of misrepresentations, by Mangieri, underlying the K-1*

The Court now turns to Plaintiff's evidence concerning Mangieri's misrepresentations allegedly underlying the K-1. Plaintiff's argument supporting the existence of a misrepresentation by Mangieri underlying the K-1, once again, relies on circumstantial

---

[7] The final 2012 Valuation lists both a Fair Market Value for Plaintiff's shares of $534,000 *and* a "Fair Value" of $677,000 for these shares. (Ex. A5 Plaintiff's Facts, Doc. 67-6). Thus, the relevant comparison would be the change in the "Fair Value" from $678,300 in the first draft to $677,000 in the final valuation. The Court notes that "Fair Value" and Fair Market Value have distinct meanings under Pennsylvania law and in accounting. E.g., Bair v. Purcell, 2008 WL 250096, at *2 (E.D. Pa. Jan. 29, 2008) (discussing this distinction). It would not be unusual for the "Fair Value" to exceed the Fair Market Value in the context of a shareholder buyout because "Fair Value" includes compensation that is fair considering all relevant circumstances, not just the market price. See, e.g., 4 West's Legal Forms, Business Organizations Div. VII § 156:4 (3d ed.) ("'Fair value' carries with it the statutory purpose that shareholders be fairly compensated, which may or may not equate with the market's judgment about the stock's value.").

inferences. The evidence, in a light most favorable to Plaintiff, shows the following. Plaintiff's allocation of ordinary business income for 2013 tax purposes was stated in the K-1 as $176,768. (Plaintiff's Facts at ¶ 20; MAAC at ¶ 70.) This allocation of income was a 98% increase from the previous year even though Plaintiff was only a minority shareholder for a partial year in 2013. (Plaintiff's Facts at ¶ 22; MAAC at ¶ 72.) ESI delivered the K-1 to Plaintiff on September 15, 2014, and Plaintiff requested tax records from ESI on September 19, 2014, and on subsequent dates to verify the calculations in the K-1. (Plaintiff's Facts at ¶¶ 20, 35-39.) However, Defendants did not provide sufficient information prior to Plaintiff's tax filing deadline for Plaintiff to verify the calculations. (Id. at ¶ 40.) Plaintiff eventually received an amended K-1 for 2013, which showed Plaintiff's allocation of ordinary business income as a loss of $2,009 rather than a gain of $176,768. (Id. at ¶ 42.) Due to Defendants' delay and the nature of the revisions to the K-1, Plaintiff was unable to receive a tax refund until the first quarter of 2016. (Id. at 44.) Based on this, Plaintiff asks the Court to conclude that Mangieri misrepresented the amount of Plaintiff's tax liability for 2013, or otherwise misrepresented facts leading to an incorrect calculation.

While Plaintiff's evidence can be taken to show a misrepresentation on the face of the initial K-1 (assuming the worst), it does not provide a single example of a false statement or representation by Mangieri.[8] To survive summary judgment, Plaintiff is obligated to submit evidence in support of each element of his claims against each Defendant. At this late stage of

---

[8] While the Court does not rely on these facts for purposes of summary judgment on this claim, the Court notes that Mangieri avers that he played no role in the preparation of the K-1. (Mangieri's SJ Brief, p. 7 ("All bank accounts and financial reporting was now the sole responsibility of Razzano . . . Razzano prepared the Plaintiff's 2013 K-1 . . . .").) Mangieri also maintains that the original K-1 was calculated correctly and does not contain or reflect any misrepresentations. (Id. at pp. 11-13.)

14

the litigation, Plaintiff has not met his burden to point to evidence showing a misrepresentation by Mangieri underlying the K-1. As a result, to the extent that Plaintiff's claim of negligent misrepresentation against Mangieri is based on the K-1, Defendant's Motion for Summary Judgment on this claim is GRANTED.

*3. Plaintiff's claims concerning breaches of contract (Counts IV, V, VI and VII)*

In Counts IV through VII of the Amended Complaint, Plaintiff asserts claims against Mangieri for breaches of the SPA, including a prayer for declaratory relief concerning Mangieri's obligations under the contract. Specifically, Plaintiff claims that Mangieri failed to provide tax returns as well as revenue and expense account activity information, as allegedly required by Sections 7.3.2 and 9.2 of the SPA, and seeks an order for declaratory relief or specific performance as to these documents. (AC at ¶¶ 181, 189.) Plaintiff also claims that, pursuant to the SPA, Mangieri was obligated to use February 20, 2013, as the date for calculating Plaintiff's 2013 K-1 tax basis and failed to do so, resulting in damages. (Id. at ¶¶ 194-197.) Finally, Plaintiff claims that Mangieri failed to indemnify Plaintiff for his losses attendant to these breaches of contract and for late installment payments under Mangieri's promissory note, as required under the SPA. (Id. at ¶¶ 203-209.) Plaintiff has moved for summary judgment on Counts V, VI and VII, which concern these breaches of contract. Mangieri has moved for summary judgment against Plaintiff on all counts, including Count IV, which concerns declaratory relief. Because the resolution of Count IV depends on the resolution of following counts, the Court will begin with Counts V through VII.

To prevail on summary judgment for a breach of contract, Plaintiff must show that the undisputed material facts, viewed in a light most favorable to Mangieri, establish: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3)

15

resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, 137 A.3d 1247, 1258 (Pa. 2016). The parties do not dispute the existence of the SPA or its essential terms. (Plaintiff's SJ Brief at ¶ 12; MAAC at 42.)

In Count V, Plaintiff claims that Mangieri failed to provide documents related to ESI's taxes. Under the SPA, Mangieri agreed, in his individual capacity, to provide Plaintiff with access to the following documents: "all information, records, and documents relating to Taxes relating to ESI or the Common Stock," pursuant to Section 7.3.2. As noted above, Plaintiff requested tax records from ESI in September 2014, to verify the K-1 tax basis calculations. (AC at ¶¶ 75-76, 78-79; MAAC at ¶¶ 75-76, 78-79.) Mangieri admits that fewer than all of the requested documents were delivered to Plaintiff. (MAAC at ¶ 80.) These facts are sufficient to show that Mangieri did not comply with the terms of the agreement. Thus, the remaining question is whether this failure to deliver documents resulted in damages to Plaintiff.

Plaintiff contends that, had he received the requested documents in a timely fashion, he would not have overpaid his taxes because he would have been able to verify that the K-1 was incorrect and his true tax liability was lower. (Plaintiff's SJ Brief, p. 5.) He further contends that he would have been able to avoid legal fees expended to gain access to this information. (Id.) Plaintiff's argument that he suffered damages as a result of missing certain documents, however, is wholly contingent on the whether the missing tax documents would have shown that the K-1 was incorrect. Mangieri disputes this fact, (See Opposition to Mangieri's Facts at ¶¶ 40-41, 57), and Plaintiff's evidence that he suffered damages under this claim, described above, is far from unassailable. The Court finds that the existence of damages caused by the missing documents is a material question of fact in dispute. As a result, summary judgment on this breach of contract

claim is inappropriate and the parties' respective Motions for Summary Judgment on this claim are DENIED.

In Count VI, Plaintiff claims that Mangieri breached the SPA by improperly using May 14, 2013, rather than February 20, 2013, as the basis date for Plaintiff's 2013 K-1. Mangieri also actively disputes this, submitting a series of emails among Mangieri, Razzano and Plaintiff allegedly showing that Plaintiff consented to using the later date for the K-1 calculations. (See Ex. 8, Mangieri's SJ Brief.) Because the merits of this claim depend on the appropriate date for the basis calculation (and the parties' consent to use a particular date), facts that the parties dispute with competing evidence, the parties' respective Motions for Summary Judgment on this claim are also DENIED.

In Count VII, Plaintiff alleges that Mangieri's installment payments pursuant to a promissory note executed with the SPA, totaling $75,000 plus interest, were each late, thus violating the terms of the SPA and the note. (AC at ¶¶ 199-204.) Plaintiff also alleges that costs incurred by virtue of this breach (in addition to the costs incurred by virtue of Mangieri's failures to deliver documents and use the correct basis date for the K-1) constitute triggers for the indemnification provision of the contract. (Id.) As to the allegedly late payments on Mangieri's promissory note, Mangieri claims that "the full settlement amount was paid in full more than a year ahead of schedule" but also states that "records do show some late payments before the early payoff occurred." (Ex. A2, Response to Mangieri's Facts, p. 24, Doc. 72-3.) Plaintiff, to the contrary, claims that all the payments were late. Yet, Plaintiff has failed to submit any records indicating when payments were received in relation to the deadlines established in the note. And, as to costs that Plaintiff allegedly incurred by virtue of Mangieri's contractual breaches in Counts V and VI, recovery for any such costs is contingent on the resolution of those

claims. As a result, each aspect of this claim involves a live factual dispute and the parties' respective Motions for Summary Judgment on this claim are DENIED.

Returning to Count IV, which Plaintiff pleads in the alternative to Counts V and VI, Defendant's Motion for Summary Judgment on this Count cannot be granted due to the factual disputes above. For the declaratory order that Plaintiff seeks in Count IV, including a statement that "Plaintiff is entitled to Indemnification of all costs recoverable under the SPA" and that the correct date for calculating the K-1 basis is earlier than the date in the K-1 provided to Plaintiff, (AC at ¶ 181), Plaintiff's entitlement to relief depends on the merits of the underlying claims, discussed above, for which the Court must weigh the strength of the parties' evidentiary submissions in order to reach a conclusion. As a result, Mangieri's Motion for Summary Judgment on this Count is DENIED.

\* \* \*

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment (**Doc. 65**) is **DENIED** and Defendant's Motion for Summary Judgment (**Doc. 69**) is **DENIED** in part and **GRANTED** in part.

IT IS SO ORDERED.

December 22, 2017          <u>s/Cathy Bissoon</u>
         Cathy Bissoon
         United States District Judge

cc (via ECF email notification):

All Counsel of Record